UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOHN WALTER WASHINGTON, Individually and on Behalf of S.W., a Minor, <br><br> Plaintiff, <br><br> VS. <br><br> SYLVIA GANAWAY, <br><br> Defendant. | CIVIL ACTION NO. <br><br> 3:07-CV-1720-G <br><br> **ECF** |

## MEMORANDUM OPINION AND ORDER

Before the court are the following: (1) the motion of the defendant, Sylvia Ganaway ("Ganaway" or "the defendant"), to dismiss the amended complaint of the plaintiff, John Walter Washington, Individually and on behalf of S.W., a minor ("motion to dismiss"); (2) the motion of the defendant for partial summary judgment; and (3) the defendant's motion for leave to file counterclaims. For the reasons set forth below, the motion to dismiss is denied and the motion for partial summary judgment is denied. The motion for leave to file counterclaims is granted.

Additionally, the plaintiff has filed a motion for reimbursement of funeral expenses, which the court will deny without prejudice; the motion is in reality an additional claim for relief that should be incorporated into the plaintiff's complaint.

I. BACKGROUND

The plaintiff and the decedent, Sheryl Washington, were married on November 19, 1988. *See* Plaintiff Washington's First Amended Original Complaint ("Complaint") at 2. The decedent took out a life insurance policy in 2005 while working as an employee of Comerica Bank. *Id.* The life insurance policy was part of a plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). Shortly thereafter, the decedent began a lengthy battle with stomach cancer that ended with her death on September 29, 2007. *Id.* at 2-3; *see also* Affidavit of John Washington ("Washington Affidavit") at 2, *attached to* Plaintiff's Memorandum Response to Defendant's Motion for Summary Judgment. During her battle with cancer, the decedent's mother -- the defendant Sylvia Ganaway -- came to live with the Washingtons. *See* Complaint at 3. Prior to the death of his wife, the plaintiff discovered that she had named Ganaway the beneficiary of life insurance policy. *Id.* The plaintiff believes that the defendant, as well as other members of the defendant's family, worked to coerce the decedent to name Ganaway as beneficiary of the policy. *Id.* at 5. Specifically, the plaintiff claims Ganaway "misrepreset[ed] her financial condition" to the decedent so as to invoke

- 2 -

her sympathy, with the aim of receiving the proceeds from the policy. *Id.* at 4. Washington avers that he had an agreement with his wife that they would designate each other as beneficiaries of their respective life insurance policies. *See* Washington Affidavit at 1. The purpose of their agreement was to ensure the support of their adopted, minor daughter. *Id.* Washington maintains that once the defendant moved in, his "financial conditions deteriorate[d]." *Id.* at 2. Prior to her diagnosis, the decedent handled many of the couple's financial affairs, and Washington claims that after the defendant moved in, money that he gave his wife for expenses was not used for its intended purpose. *Id.* Money went "unaccounted for," and Washington's wife asked him to borrow money so they could give the defendant $3000. *Id.* at 3. Washington states that, after more than 18 years of marriage, his wife had never acted in such a manner. *Id.*

The plaintiff brings suit pursuant to 29 U.S.C. § 1132(a)(1)(B), and also brings claims for undue influence and for attorney's fees. *See generally* Complaint. The defendant moves to dismiss the plaintiff's claims and also for partial summary judgment, arguing that the plaintiff's claims are preempted by ERISA.

## II. ANALYSIS

### A. Motion to Dismiss

#### 1. *Rule 12(b)(6) Standard*

The defendant has moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, 127 S.Ct. at 1964-65 (citations, quotations marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal*, 495 F.3d at 205 (internal quotation marks omitted) (quoting *Bell Atlantic*, 127 S.Ct. at 1965). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted) (quoting *Martin K. Eby Construction Company v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

## 2. *ERISA Preemption*

In her motion to dismiss, Ganaway quotes extensively from the Supreme Court case *Egelhoff v. Egelhoff*, 532 U.S. 141 (2000). However, the defendant fails to provide much analysis or discussion of how *Egelhoff* applies to the case before the court, stating only that the plaintiff's claims "are of the same character as the law in the *Egelhoff* case," though more complex, and that the state law claims should be preempted. *See* Motion to Dismiss at 7-8. In response, the plaintiff argues that he has "sufficiently pled a federal cause of action under ERISA and under federal common law." *See* Plaintiff's Response to Defendant's Motion to Dismiss ("Response") at 1.

"ERISA's express pre-emption clause states that the Act 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . .'" *Boggs v. Boggs*, 520 U.S. 833, 841 (1997) (quoting 29 U.S.C. § 1144(a)). "'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). Courts have noted that the ERISA preemption provision is "clearly" and "deliberately expansive." See *Egelhoff*, 532 U.S. at 146; *District of Columbia v. Greater Washington Board of Trade*, 506 U.S. 125, 129 (1992). The words "relate to" have been construed in their broadest sense. See *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983); *Mayeaux v. Louisiana Health Service & Indemnity Company*, 376 F.3d 420, 432 (5th Cir. 2004). The Supreme

Court has noted, however, that "the term 'relate to' cannot be taken 'to extend to the furthest stretch of its indeterminacy' or else 'for all practical purposes pre-emption would never run its course.'" *Egelhoff*, 532 U.S. at 146 (quoting *Travelers Insurance Company*, 514 U.S. at 655). A state law "relates to" an employee benefit plan, and is pre-empted by ERISA, "if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 97; see *Egelhoff*, 532 U.S. at 147. Nonetheless, the Supreme Court has "cautioned against an 'uncritical literalism' that would make preemption turn on 'infinite connections.'" *Egelhoff*, 532 U.S. at 147 (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Company*, 514 U.S. 645, 655 (1995)).

### 3. *Undue Influence Claim*

The plaintiff cites *Manning v. Hayes*, 212 F.3d 866 (5th Cir. 2000), *cert. denied*, 532 U.S. 941 (2001), to support his argument that the Fifth Circuit Court of Appeals has traditionally applied federal common law to disputes over who is entitled to the benefits of an ERISA plan. *See* Response at 1. Though *Manning* involved the issue of waiver (and not undue influence), its reasoning is instructive. *Manning*, 212 F.3d at 874. The defendant argues that, post-*Egelhoff*, federal common law no longer applies to cases involving ERISA. This reading of *Egelhoff*, however, is incorrect. The Fifth Circuit has held that "*Egelhoff* does not undermine this court's practice of applying federal common law to determine if an ERISA plan's named beneficiary has effected a

valid waiver of her rights under the plan." *Guardian Life Insurance Company v. Finch*, 395 F.3d 238, 240-42 (5th Cir. 2004) (affirming magistrate judge's determination that beneficiary waived her rights under an ERISA-governed life insurance policy when she entered into a divorce decree with her decedent husband that awarded him all "right, title, interest, and claim in and to" his life insurance policies), *cert. denied*, 544 U.S. 1056 (2005). Therefore, by analogy, the plaintiff argues that this court should be allowed to consider his claim of undue influence. The court agrees. Under the preemption framework in *Manning*, once it has been established that the claim for undue influence "relates to" the ERISA plan,[1] the question is "whether . . . the federal law governing the resolution of this [case] . . . may be reasonably drawn from the text of ERISA itself, or must instead be developed as a matter of federal common law." *Manning*, 212 F.3d at 870. As the court in *Manning* stated, "ERISA does not expressly address the circumstances, if any, in which a non-beneficiary may avoid the payment of life insurance benefits to the named beneficiary." *Id.* at 871-72. Such is the case before the court, and as a result, the court applies federal common law to Washington's claims.

In *Brandon v. Travelers Insurance Company*, 18 F.3d 1321, 1326 (5th Cir. 1994), *cert. denied*, 513 U.S. 1081 (1995), the Fifth Circuit explained that, when looking to

---

[1] The court finds that the claim for undue influence under Texas common law does "relate to" the ERISA plan; Washington's claim impacts "the designation of an ERISA beneficiary." *Manning*, 212 F.3d at 870.

federal common law, where such law is "not clear, [the courts] may draw guidance from analogous state law." (quoting *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir. 1990)). The federal common law of undue influence, while not necessarily "clear," began with the Sixth Circuit case of *Tinsley v. General Motors Corporation*, 227 F.3d 700 (6th Cir. 2000). In *Tinsley*, the court, noting an absence of federal common law, looked to state-law principles to fill the void for claims of undue influence in ERISA plan beneficiary cases. *Id.* at 704. Drawing on the law in the states of Michigan, Tennessee, and Ohio, the court established the general principles and defined undue influence as influence "sufficient to overpower volition, destroy free agency, and impel the grantor to act against the grantor's inclination and free will." *Id.* (internal quotation marks and citations omitted).[2] The *Tinsley* court then explained further, noting that "[a] showing of mere motive or opportunity to exert excessive control over another is not enough to make out a claim of undue influence; rather, the influence must actually be exerted, either prior to or at the time of the execution of the relevant document." *Id.* at 705.[3]

---

[2] The elements of a claim for undue influence, as developed by the Sixth Circuit, are not a significant departure from the law of the State of Texas. To establish a claim for undue influence in Texas, the plaintiff must prove: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the person's mind when executing the document; and (3) the person would not have executed the document but for the influence. *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963).

[3] The *Tinsley* court also noted a number of relevant factors to use when
(continued...)

Other courts have utilized the Sixth Circuit's framework when considering claims for undue influence in an ERISA context. See *Rice v. Office of Servicemembers' Group Life Insurance*, 260 F.3d 1240, 1250 (10th Cir. 2001) (applying the *Tinsley* rule to evaluate an undue influence claim); *Sun Life Assurance Company v. Tinsley*, 2007 WL 1052485 (W.D. Va. 2007) at *2-3 (adopting the Sixth Circuit's undue influence analysis and declining to derive a separate rule from state law within the Fourth Circuit), *aff'd*, 2008 WL 78707 (4th Cir. 2008).

The Sixth Circuit decision in *Tinsley* is not binding on this court. However, in an effort to develop a clear body of federal common law, as well as to effectuate Congress's intent to establish a comprehensive federal scheme for the protection of the participants and beneficiaries of employee benefit plans, the court will adopt the *Tinsley* rule. *See* 29 U.S.C. § 1001. Turning now to the plaintiff's claims, the court finds that Washington has sufficiently pleaded a cause of action for undue influence. Washington alleges that the defendant exerted an undue influence on the decedent sufficient to subvert or overpower the decedent's mind at the time she designated the

---

[3](...continued)
determining whether undue influence was exerted in a particular case, including "the physical and mental condition of the benefactor; whether the benefactor was given any disinterested advice with respect to the disputed transaction; the 'unnaturalness' of the gift; the beneficiary's role in procuring the benefit and the beneficiary's possession of the document conferring the benefit; coercive or threatening acts on the part of the beneficiary, including efforts to restrict contact between the benefactor and his relatives; control of benefactor's financial affairs by the beneficiary; and the nature and length of the relationship between the beneficiary and the benefactor." *Tinsley*, 227 F.3d at 705.

defendant as the beneficiary of the insurance policy at issue. *See* Complaint ¶ 13. Washington also complains that, but for the defendant's influence, the decedent would not have designated the defendant as the beneficiary. *Id.* Therefore, because the plaintiff has sufficiently pleaded a cause of action for undue influence under the federal common law, the defendant's motion to dismiss is denied.

### B. Motion for Summary Judgment

#### 1. *Legal Standard for Summary Judgment*

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see also *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986). The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986). While all of the evidence must be viewed in a light most favorable to the nonmovant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d

1069, 1075 (5th Cir. 1994) (en banc)).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The movant makes the necessary showing by informing the court of the basis of her motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex*, 477 U.S. at 323.  The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.  FED. R. CIV. P. 56(c).

If the movant makes the required showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  To carry this burden, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Company, Limited v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249.  When conflicting evidence is presented, the court is not permitted to make credibility determinations regarding the evidence.  See *Lindsey v. Prive Corporation*, 987 F.2d 324, 327 (5th Cir. 1993).  The nonmovant cannot survive a motion for summary judgment, however, by merely resting on the allegations in his pleadings.  *Isquith for and on behalf of Isquith v. Middle*

*South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); see also *Celotex*, 477 U.S. at 324.

2. *Defendant's Motion for Partial Summary Judgment*

The defendant moves for partial summary judgment, employing the same arguments presented in her motion to dismiss.[4] *See generally* Brief in Support of Defendant's Motion for Partial Summary Judgment ("Motion for Summary Judgment"). The plaintiff has presented the following facts to support a claim for undue influence: (1) Washington and his deceased wife had agreed prior to her employment with Comerica and prior to her cancer diagnosis that each would designate the other as beneficiaries of their respective life insurance policies; (2) after his wife was diagnosed with cancer, Washington confirmed their prior agreement; (3) the defendant came to live with Washington and his ailing wife shortly after the decedent was diagnosed with cancer; (4) as a result of the cancer, the decedent was "in a very weakened state of health"; (5) after the arrival of his mother-in-law, Washington noticed that money intended to be used for the couple's financial obligations was disappearing; (6) Washington's wife requested that he obtain a loan in order to give the defendant $3000; and (7) Washington's wife began to pawn

---

[4] The defendant's motion to dismiss and motion for partial summary judgment are essentially carbon copies of one another, including little argument but extensive block quotations from the *Egelhoff* case.

personal items for money that became unaccounted for. *See generally* Washington Affidavit.

Viewing the evidence in a light most favorable to the plaintiff as the non-movant, the court finds that summary judgment would be inappropriate at this stage. Washington has presented sufficient evidence in his affidavit that raises issues of material fact with respect to his claim of undue influence.

### III. CONCLUSION

For the reasons stated above, the defendant's motion to dismiss and the defendant's motion for partial summary judgment are **DENIED**. The defendant's motion for leave to file counterclaims is **GRANTED**, and the plaintiff's motion for reimbursement of funeral expenses is **DENIED** without prejudice to the plaintiff's seeking leave to amend his complaint to include them.

**SO ORDERED**.

July 2, 2008.

									*A. Joe Fish*
									A. JOE FISH
									**Senior United States District Judge**